IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL JOSEPH SULLA, JR.,<br>GARY CHARLES ZAMBER, and<br>RAJSESH P. BUDHABHATTI<br><br>Defendants. | CR. NO. 22-00058 JAO-KJM<br><br>**ORDER DENYING DEFENDANT BUDHABHATTI'S MOTION TO STAY FURTHER PROCEEDINGS (ECF NO. 114)** |

**ORDER DENYING DEFENDANT BUDHABHATTI'S MOTION TO STAY FURTHER PROCEEDINGS (ECF NO. 114)**

Before the Court is Defendant Rajesh P. Budhabhatti's ("Budhabhatti") motion to stay further proceedings ("Motion"), *see* ECF No. 114, pending his interlocutory appeal of the Court's denial of his motion to dismiss the indictment, *see* ECF No. 112 ("Order").  The Government opposes the Motion.  *See* ECF No. 121.  For the following reasons, the Court DENIES the Motion.

### I.  BACKGROUND

On August 4, 2022, the Grand Jury indicted Defendants Paul Joseph Sulla, Jr. ("Sulla"), Budhabhatti, and Gary Charles Zamber (collectively, "Defendants") on one count of Conspiracy to Commit Honest Services Wire Fraud in violation of 18 U.S.C. § 1349 (Count 1), and nine counts of Honest Services Wire Fraud in

violation of 18 U.S.C. §§ 1343 and 1346 (Counts 2-10).  ECF No. 11 (Superseding Indictment).  Sulla is also charged with one count of Money Laundering in violation of 18 U.S.C. § 1956 (a)(1)(B)(i), predicated on the honest-services wire fraud charges (Count 11).  *See id*.  Defendants pled not guilty.  *See* ECF Nos. 28, 29, 30.

According to the Superseding Indictment, Defendants supplied bribes and kickbacks to Alan Scott Rudo ("Rudo"), not charged in the instant case, which deprived the County of Hawaiʻi ("County") and its citizens of their intangible rights to Rudo's honest services while he worked for the County's Office of Housing and Community Development as a Housing and Community Development Specialist.[1]  *See* ECF No. 11 at 5.

In October 2023, Defendants sought to dismiss or limit the scope of the Superseding Indictment.  *See* ECF Nos. 70-76.  Defendants primarily contended that the Superseding Indictment failed to state an offense, as the scheme alleged did not amount to anything more than self-dealing, which as a matter of law cannot constitute honest-services fraud.  *See* ECF No. 71 (Budhabhatti's Motion to Dismiss).  The Government filed a consolidated response to the motions.  *See* ECF No. 89.

---

[1] The Court's Order, *see* ECF No. 112, provides a fuller factual background of the case.

The Court heard argument on these motions on November 15, 2023, *see* ECF No. 111, and ultimately denied the motions to dismiss the indictment, *see* ECF No. 112.  In the Order, the Court emphasized that its decision was based on the procedural posture of the case and the exceedingly low bar to survive a motion to dismiss an indictment for failure to state an offense, especially where the Government has explicitly alleged the elements of the crimes charged.  *See* Fed. R. Crim. P. 12(b)(3)(v); ECF No. 112 at 8-13.  The Court also expressed its general agreement with Defendants that self-dealing alone cannot be honest-services fraud and that, without more evidence, "the scheme alleged here *may* not amount to more than self-dealing."  *See* ECF No. 112 at 16 (emphasis added).  To ensure clarity on the law going into trial, the Court ordered the parties to submit proposed jury instructions in April 2024, *see* ECF No. 112 at 13, several months before trial would begin in September 2024, *see* ECF No. 106 (scheduling order).

Budhabhatti appealed the Court's interlocutory order, *see* ECF No. 113, and filed the instant motion to stay further proceedings pending his appeal, *see* ECF No. 114, which the Government opposes, *see* ECF No. 121.  Budhabhatti replied to the Government's opposition, *see* ECF No. 123, and the Court now decides the Motion without a hearing.

## II.     LEGAL STANDARDS

The Court has authority to stay a case pending appeal from an interlocutory order. Whether to grant a stay "is an exercise of discretion" rather than "a matter of right, even if irreparable injury would result." *Nken v. Holder,* 556 U.S. 418, 433 (2009). Thus, "[t]he party requesting the stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. *Nken* requires courts to consider four factors when deciding whether to issue a stay pending appeal of a criminal order[2]:

> (1) Whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 434 (internal quotation omitted). "The first two factors . . . are the most critical. It is not enough that the chance of success on the merits be 'better than negligible.' . . . By the same token, simply showing some 'possibility

---

[2] In the context of civil cases, several district courts within the Ninth Circuit have applied the stay analysis in *Landis v. North American Co.*, 299 U.S. 248 (1936), not the stay analysis set forth in *Nken v. Holder*, 556 U.S. 418 (2009), when determining whether to stay a case pending the resolution of an interlocutory appeal. However, in criminal cases, district courts in the Ninth Circuit use the *Nken* analysis when analyzing whether to stay a criminal case pending interlocutory appeal. *See, e.g., United States v. Sudbury*, 2022 WL 3139931, at *3 (D. Haw. Aug. 5, 2022) (collecting cases).

of irreparable injury,' fails to satisfy the second factor[.]" *Id.* at 434–35 (internal quotations and citations omitted).

Significantly, while "[t]he filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal," *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam) (citations omitted), doing so "from an unappealable decision does not divest the district court of jurisdiction." *United States v. Hickey*, 580 F.3d 922, 928 (9th Cir. 2009) (citation omitted). Indeed, "[w]here the deficiency in a notice of appeal, by reason of untimeliness, lack of essential recitals, or reference to a non-appealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction." *Ruby v. Sec'y of U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966) (en banc).

Federal courts of appeals are empowered to review "all *final* decisions of the district courts." *See* 28 U.S.C. § 1291 (emphasis added). This "rule of finality has particular force in criminal prosecutions because 'encouragement of delay is fatal to the vindication of the criminal law.'" *United States v. MacDonald*, 435 U.S. 850, 853–54 (1978) (quoting *Cobbledick v. United States*, 309 U.S. 323, 325 (1940)). Generally, "finality coincides with the termination of the criminal proceedings." *United States v. Vela*, 624 F.3d 1148, 1151 (9th Cir. 2010). In other

words, appellate review is reserved "until after conviction and imposition of sentence" unless an exception applies. *United States v. McIntosh*, 833 F.3d 1163, 1170 (9th Cir. 2016).

The Supreme Court has recognized limited exceptions to the rule that only final decisions are appealable, including the "collateral order doctrine." *United States v. Romero-Ochoa*, 554 F.3d 833, 835 (9th Cir. 2009) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)). And courts interpret the doctrine "with the utmost strictness in criminal cases." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) (quotation omitted). To assess whether an order qualifies as an appealable collateral order, courts utilize the *Cohen* test, which requires that "an order must '[(1)] conclusively determine the disputed question, [(2)] resolve an important issue completely separate from the merits of the action, and [(3)] be effectively unreviewable on appeal from a final judgment.'" *Romero-Ochoa*, 554 F.3d at 836 (quoting *Will v. Hallock*, 546 U.S. 345, 349 (2006); other citations omitted).

### III.   DISCUSSION

As to the first *Nken* factor, Budhabhatti has not demonstrated that he is likely to succeed on the merits of his appeal because he has not shown that the Ninth Circuit can exercise jurisdiction over the appeal. He does not dispute that the Order is not a final order for the purposes of 28 U.S.C. § 1291. And the Order

is not a collateral order as Budhabhatti would have the Court believe. *See* ECF No. 113 at 2.

"[A]n order denying a motion to dismiss an indictment for failure to state an offense is plainly not 'collateral' in any sense of that term; rather it goes to the very heart of the issues to be resolved at the upcoming trial." *Abney v. United States*, 431 U.S. 651, 663 (1977); *see also United States v. Carnes*, 618 F.2d 68, 70 (9th Cir. 1980) (citing *United States v. Young*, 544 F.2d 415, 416 (9th Cir. 1976)) ("[A] denial of a motion to dismiss an indictment is not a final order when the motion is not made on colorable grounds of double jeopardy."). And while "there is some obvious benefit to defendants in forestalling an improper trial, this concern is not sufficient to overcome the strong policies against piece-meal appeals" when "the right asserted . . . may be vindicated in an appeal from the final judgment." *United States v. Butterworth*, 693 F.2d 99, 101 (9th Cir. 1982).

Even setting aside that clear caselaw, the Order does not meet the *Cohen* test for an appealable collateral order. First, the Order does not conclusively determine the disputed question—namely, whether the scheme as alleged is factually insufficient as a matter of law to constitute honest-services wire fraud. The Court emphasized that at the relevant procedural stage, the Government had sufficiently pled the elements of the offense to survive Rule 12(b)(3)(v). ECF No. 112 at 13. The Court noted, however, that its decision is "not based on the legal viability" of

7

either theory of bribery and kickbacks that the Government offered. *Id*. Rather, the Court set an expedited schedule to resolve jury instruction matters in the case ahead of trial so that there would be no misunderstanding of the legal landscape before trial begins. *Id*. Moreover, the Court explicitly observed that it expects Defendants "to attack the sufficiency of the evidence and the legal theories underpinning the case at trial and in appropriate motions," *id.* at 26, which offer future opportunities for the Court or jury to resolve the disputed question.

      Nor is the question on appeal here "completely separate from the merits of the action." *Romero-Ochoa*, 554 F.3d at 836 (quotation omitted). Rather, "it goes to the very heart of the issues to be resolved at the upcoming trial," *Abney*, 431 U.S. at 663, i.e., whether the Government can prove that the scheme alleged amounts to more than self-dealing so as to constitute honest-services fraud. If the Government fails to do so, Budhabhatti will be acquitted either by the jury or on a Rule 29 motion. *See* Fed. R. Crim. P. 29(a). In other words, the question on which Budhabhatti seeks interlocutory review is whether he can be found guilty, which is inherently tied to the merits of the action. This is why *Abney* explicitly holds that "an order denying a motion to dismiss an indictment for failure to state an offense is plainly not 'collateral' in any sense of that term[.]" *Abney*, 431 U.S. at 663. That express holding alone is enough for the Court to conclude that Budhabhatti has no likelihood of success on the merits of his appeal.

In his Notice of Appeal, Budhabhatti relies on *United States v. Pangang Grp. Co., Ltd.*, 6 F.4th 946 (9th Cir. 2021), to argue that the Ninth Circuit has collateral order jurisdiction and that he has a right not to stand trial "for his participation in the self-dealing scheme described in the superseding indictment." ECF No. 113 at 3.  But *Pangang* is inapplicable here.  *See* ECF No. 121 at 14.

In *Pangang*, the trial court denied the defendants' motion to dismiss the indictment on foreign sovereign immunity grounds, which the Ninth Circuit had long held an appealable collateral issue in the civil context given the explicit right of foreign sovereigns to avoid suit.  *Pangang*, 6 F.4th at 952.  As the Government notes, *see* ECF No. 121 at 15, *Pangang* specifically cautioned that a "'party's agility' in 'characterizing the right asserted' as 'an irreparable right not to stand trial' is not dispositive and that the right must 'rise to the level of importance needed for recognition under § 1291.'"  *Pangang*, 6 F.4th at 952 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 87172 (1994)).  And the Supreme Court has been equally clear: "A right not to be tried in the sense relevant to the [collateral order] exception rests upon an explicit statutory or constitutional guarantee that trial will not occur—as in the Double Jeopardy Clause . . . or the Speech or Debate Clause[.]"  *Midland Asphalt*, 489 U.S. at 801 (internal citations and quotations omitted).  In *Pangang*, the Ninth Circuit held that the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603(a), was one such important guarantee

9

against trial in the criminal context. *Pangang*, 6 F.4th at 952. Here, however, Budhabhatti identifies no statutory or constitutional provision that would immunize him or otherwise guarantee that trial will not occur, let alone one that rises to the level of the Double Jeopardy Clause, the Speech or Debate Clause, or the principle of foreign sovereign immunity.

Budhabhatti also contends that "[w]hether the Ninth Circuit has appellate jurisdiction is the Ninth Circuit's call to make; it is not this Court's province to make legal conclusions about the scope of the Ninth Circuit's jurisdiction in a docketed appeal." ECF No. 123 at 3. But it is this Court's province to determine whether he has met the *Nken* factors. And "[w]here the deficiency in a notice of appeal, by reason of untimeliness, lack of essential recitals, *or reference to a non-appealable order*, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction." *Ruby*, 365 F.2d at 389 (emphasis added).

Budhabhatti further contends in his reply that the Government and the Court have misunderstood his dismissal argument as an argument about "notice" rather than an assertion that "the facts alleged in the indictment state a type of fraud that—as a matter of law as the Supreme Court has determined the law to be—does not count as honest services fraud." ECF No. 123 at 2. And so, he urges, he has "a substantial case on the merits" under the first *Nken* stay factor. *Id.*

The Court understands the distinction that Budhabhatti attempts to draw, but his dispute is with the standard set by the Ninth Circuit. The Ninth Circuit has repeatedly stated whether an indictment will survive a Rule 12(b)(3)(v) motion depends on whether it states the elements of the crime alleged so as to put the defendant on notice of the charges against him, including in the honest-services fraud context. *See, e.g.*, *United States v. Milovanovic*, 678 F.3d 713, 727 (9th Cir. 2012 (en banc) ("In cases where the indictment tracks the words of the statute charging the offense, the indictment will be held sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense."); *see also* Fed. R. Crim. P. 12. The Court agrees with Budhabhatti that the allegations in the Superseding Indictment raise questions about the validity of the legal theory on which the Government will prosecute the case. *See* ECF No. 112 at 15–16. But again, that argument "goes to the very heart of the issues to be resolved at the upcoming trial," *Abney*, 431 U.S. at 663.

The third *Cohen* factor—whether the Order is effectively unreviewable on appeal from a final judgment—also weighs against a stay, and for the same reasons weighs against a finding of irreparable harm under *Nken*. Assuming the Court was wrong in its Order and the Government prosecutes Budhabhatti on an insufficient legal theory, that decision "may be reviewed effectively, and, if necessary, corrected if and when a final judgment results." *Abney*, 431 U.S. at 663. There is

no chance that the Order is "effectively unreviewable on appeal from a final judgment." *Romero-Ochoa*, 554 F.3d at 836.  And it is not enough that Budhabhatti will have endured a trial premised on a mistake of law.  *Butterworth*, 693 F.2d at 101.  The purpose of an appeal, should Budhabhatti be convicted, would be to correct the potential mistake Budhabhatti complains of now—or, put in *Nken*'s language, to repair the harm.  The Court recognizes that "'[a] fully litigated case can no more be untried than the law's proverbial bell can be unrung, and almost every pretrial or trial order might be called 'effectively unreviewable' in the sense that relief from error can never extend to rewriting history.'" *Romero-Ochoa*, 554 F.3d at 838 (quoting *Digital Equip.*, 511 U.S. at 872).  But the "'mere identification of some interest that would be 'irretrievably lost' has never sufficed to meet the third *Cohen* requirement.'" *Id.* (quoting *Digital Equip.*, 511 U.S. at 872).  Thus, the Court declines to exercise its discretion to stay the trial simply because "the ordeal of having been subjected to trial cannot be undone and [would] not [be] fully remedied by vacating [Budhabhatti's] conviction." ECF No. 114 at 6.  The Court acknowledges that this is more than just unfortunate for Budhabhatti, but the caselaw is nonetheless clear that the ringing of the bell isn't enough to warrant the Circuit Court's review of the Order here, nor is it enough to satisfy either of the two "most critical" *Nken* factors.  *Nken*, 556 U.S. at 434.

Because Budhabhatti has "not satisfied the first two [*Nken*] factors, [the Court] need not dwell on the final two factors—harm to the opposing party and the public interest," *Al Otro Lado v. Wolf*, 952 F.3d 999, 1014 (9th Cir. 2020) (internal quotations and modifications omitted), which "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. Still, the Court notes that the public interest lies in the speedy "vindication of criminal law," as delays "may prejudice the prosecution's ability to prove its case, . . . prolong the period during which defendants released on bail may commit other crimes," and otherwise prejudice law enforcement's ability to pursue other matters. *United States v. Austin*, 416 F.3d 1016, 1020 (9th Cir. 2005) (internal quotations and citations omitted).

In sum, the Court declines to exercise its discretion to grant a stay pending interlocutory appeal because Budhabhatti has not made a sufficient showing under the factors set forth in *Nken*.[3]

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES the Motion, ECF No. 114.

///

---

[3] The Court would have reached the same result if it applied the *Landis* analysis, weighing "the competing interests which will be affected by the granting or refusal to grant a stay" such as "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (explaining the *Landis* analysis).

IT IS SO ORDERED.

Dated: Honolulu, Hawaiʻi, December 15, 2023.

Jill A. Otake
United States District Judge

---

*United States v. Paul Joseph Sulla, et al.*, Crim. No. 22-00058 JAO-KJM; ORDER DENYING DEFENDANT BUDHABHATTI'S MOTION TO STAY FURTHER PROCEEDINGS (ECF NO. 114)